**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VINCENT FORRAS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | **Case No. 1:12-cv-00282-RWR** |
| **v.** | ) | **Judge Richard W. Roberts** |
| | ) | |
| **IMAM FEISAL ABDUL RAUF, *et al.*** | ) | |
| | ) | |
| **Defendants** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS AND FOR ATTORNEYS' FEES**

**PRELIMINARY STATEMENT**

This action is one of a series of abusive lawsuits brought by Plaintiff Vincent Forras and

his co-Plaintiff and attorney Larry Klayman, seeking to infringe on Defendants' First

Amendment rights to support the construction of a proposed Islamic cultural center in Lower

Manhattan, a project characterized by its opponents as the "Ground Zero Mosque."  Not content

merely to oppose the project through litigation in New York (the "New York Action"), Forras

and Klayman chose to commence suit in the District of Columbia, a jurisdiction that has no

connection with the Defendants or any of the matters in issue, and to sue not only the project's

imam, but also to sue Adam Leitman Bailey, the attorney defending the project in New York, for

statements made exclusively as part of the defense of the New York Action.  Because the

Plaintiffs' D.C. litigation was brought in a distant forum seeking damages for statements made in

a judicial proceeding concerning what was then a matter of intense public interest, this litigation

was a classic strategic lawsuit against public participation ("SLAPP" suit).  *See*  D.C. Code § 16-

5501 (definitions for D.C. Anti-SLAPP Act).

Plaintiffs originally brought suit against the Defendants herein in the D.C. Superior Court (the "Superior Court Action"), filing a complaint identical in substance to the Complaint herein. After having been given three extensions of time to file their opposition to Defendants' motion for judgment on the pleadings and for attorneys' fees, Plaintiffs elected not to oppose Defendants' motion, but rather, on the final day opposition could be filed, commenced this action in this Court (the "Federal Action") and filed a (procedurally improper) notice of dismissal of the Superior Court Action.  Plaintiffs noted that they were dismissing the Superior Court Action due to a then-recent decision of this Court finding that a D.C. Anti-SLAPP Act attorneys' fee award was not available in federal district court actions (a holding contradicted by subsequent decisions of this Court).  Plaintiffs' actions make clear that they recognized that they could not avoid dismissal and Anti-SLAPP Act attorneys' fees in Superior Court, so they took the only option they believed they had to avoid fees being imposed against them in this patently frivolous litigation: transferring the action to this Court.

Plaintiffs' Complaint is deficient on multiple grounds:  (1) as an initial matter, Plaintiffs' hastily converted Complaint improperly invokes the diversity jurisdiction of this Court because it fails to allege the citizenship of the parties; (2) the Complaint alleges *no* contacts between the Defendants and the District of Columbia, much less the minimum contacts required for personal jurisdiction under D.C.'s long-arm statute and the Due Process Clause of the U.S. Constitution; (3) Plaintiffs' claims are barred by the applicable statutes of limitation of both New York and the District of Columbia; (4) the statements Plaintiffs complain of were made in the course of a judicial proceeding and thus absolutely privileged; (5) Plaintiffs' claims are barred by the D.C. Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.*; (6) Defendant's statements regarding public figures involved in a matter of substantial public controversy are protected by the First

Amendment to the U.S. Constitution; and (7) Plaintiffs' claims are barred by the doctrines of *res judicata* and collateral estoppel.  As such, this Court must dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), (2), (3) & (6) and the D.C. Anti-SLAPP Act.

Moreover, Plaintiffs' did not bring either of its District of Columbia actions for any legitimate purpose, but rather Plaintiffs' sole purpose has been to quell Defendants' First Amendment right to speak and advocate on a matter of public concern.   Plaintiffs' dismissal of the Superior Court Action and filing the same claims in the Federal action is a particularly unreasonable and vexatious multiplication of litigation.  Plaintiffs were on clear notice of the defects of their claims by reason of the dismissal motion that the Plaintiffs avoided responding to in the Superior Court Action.[1]  Plaintiff Klayman has been repeatedly sanctioned and admonished for his improper conduct by courts in this District and throughout the country, and these proceedings are consistent with his long history of vexatious litigation, including proceedings brought against lawyers and judges brought merely because they opposed Klayman in actions he had brought or ruled against him in such actions.  As such, Defendants should be awarded all of the attorneys' fees they have incurred in both the Superior Court and Federal Court Actions under the D.C. Anti-SLAPP Act, 28 U.S.C. § 1927, and this Court's inherent ability to prevent abuse of the judicial process.

## STATEMENT OF FACTS

### A.    <u>The New York Action</u>

This litigation springs out of the efforts of members of the Islamic community in New York City who sought to build an Islamic community center on Park Place in lower Manhattan, several blocks away from the site of the tragic destruction of the World Trade Center in the

---

[1]     Defendants' Superior Court Action motion sought dismissal based on six of the seven defects in the Complaint set forth above, the exception being failure to allege diversity jurisdiction, a requirement inapplicable in Superior Court.

September 11, 2001 attacks.  The proposed community center, which its opponents characterized as the "Ground Zero Mosque," (though it was neither a mosque nor at Ground Zero) became the subject of vigorous and extensive debate in American politics centering on such subjects as the effects of the September 11th terrorist attacks, national security, freedom of religion, freedom of speech, and religious and ethnic tolerance. *See e.g.*, Michael Barbaro, *Debate Heats Up About Mosque Near Ground Zero*, N.Y. Times, July 31, 2010; Philip Kennicott, *Designs for NYC's Park51 Islamic Center Show a Literally Enlightened Building*, Washington Post, October 7, 2010 at C01; *Annie Gowen*, Near Ground Zero, *Mosque Supporters Gather to Show Their Support*, Washington Post, September 11, 2010; Jeff Jacoby, *A Mosque at Gorund Zero*, Boston Globe, June 6, 2010; ABC News, "Ground Zero 'Mosque' is Approved," (August 3, 2010), available at http://abcnews.go.com/WNT/video/ground-zero-mosque-clears-final-hurdle-wtc-world-trade-center-911-debate-muslim-community-center-11317471 (visited May 13, 2013); CBS News, "Obama Defends Ground Zero Mosque," (August 13, 2010), available at http://www.cbsnews.com/video/watch/?id=6771227n (visited May 13, 2013); *see generally* Wikipedia, *Park51 Controversy* (visited May 13, 2013).

Plaintiff Vincent Forras claims to have been a "first responder" to the terrorist attacks of September 11, 2001, but the veracity of his claims regarding his work in the aftermath of the attacks have been sharply disputed.  Graham Rayman, *Controversy Swells Over 9/11 Nonprofit Event and its Founder, Vincent Forras*, Village Voice, Sept. 11, 2012 (attached as Exhibit 6 to Declaration of Adam Leitman Bailey dated May 12, 2013 ("Bailey Decl.")); Graham Rayman, *9/11: The Winners: For Some People, the Terrorist Attacks have been a Gold Mine*, Village Voice, Aug. 31, 2011 (Bailey Decl., Ex. 7).  What is undisputed, however, is that Forras has made himself an outspoken public advocate on issues regarding the September 11 attacks,

personally and through an organization he founded, the Gear Up Foundation.  See Complaint

("Compl.") ¶ 7 (attached as Exhibit 1 to Declaration of Christopher Hoge dated May 12, 2013);

"About Vincent Forras", website of Gear Up Foundation,

<http://www.gearupfoundation.org/index.php/foundation/about_vinny>  (visited May 9, 2013)

(Bailey Decl., Ex. 8).  Further, Forras ran as a candidate in the 2010 election for United States

Senator from the State of Connecticut.  Vincent Forras, FEC Form 2:  Statement of Candidacy,

June 12, 2009 (available at <http://images.nictusa.com/pdf/471/29020211471/29020211471.pdf>

(visited May 9, 2013)) (Bailey Decl., Ex. 9); website of Vincent Forras for US Senate,

<www.vincentforras.com> (visited May 9, 2013) (Bailey Decl., Ex. 10).  As such, Vincent

Forras is a public figure with respect to the matters at issue in this litigation.

     Plaintiff Larry Klayman admits that he is "a publicly known civil rights and individual

rights activist."  (Compl. ¶ 7).   Personally and through an organization he founded, Freedom

Watch, he engages in political commentary and institutes litigation on behalf of causes he

advocates.  "About Us" & "About Larry Klayman", website of Freedom Watch

<www.freedomwatchusa.org> (visited May 9, 2013) (Bailey Decl., Ex. 11).  As such, Larry

Klayman is also a public figure with respect to the matters at issue in this litigation.  Indeed, in

*Klayman v. Segal*, 783 A.2d 607 (D.C. 2001), Plaintiff Klayman obtained judicial recognition of

his status as a public figure in a defamation action against the Washington Post and its reporter

for various claims, including defamation, where the District of Columbia Court of Appeals noted

that "Mr. Klayman does not dispute that he considers his activities to warrant significant media

attention.  He makes much in his pleadings and other submissions in this case of his dedication to

investigating and exposing corruption in government and he does not deny that he has made a

concerted effort to obtain media coverage for his positions and for the activities of Judicial

Watch." *Id.* at 612.  Mr. Klayman is therefore collaterally estopped to deny that he is a public

figure for purposes of the defamation laws.  *See Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C.

2008).

Plaintiff Forras, through his attorney Plaintiff Klayman, brought an action in the Supreme

Court of the State of New York, New York County entitled *Forras v. Rauf*, Index No.

111970/2010 (the "New York Action") against Imam Rauf and the developer of the proposed

community center.  In a September 26, 2012 Decision and Order reported as 39 Misc.3d

1215(A), 2012 N.Y. Slip Op. 52479(U), 2012 WL 7986872 (Sup. Ct., N.Y. Cty., 2012) (slip

opinion attached as Bailey Decl., Ex. 1) (the "New York Dismissal Order"), the Honorable Lucy

Billings dismissed the New York Action for failure to state a claim and granted sanctions against

Klayman for his unexplained failure to attend a court hearing.[2]  The New York Dismissal Order

has not been appealed, and the time to appeal has expired.  (Bailey Decl., ¶ 16).  Klayman has

not paid the sanctions awarded in the New York Dismissal Order.  (Bailey Decl., ¶ 17).

On October 7, 2010, the defendants in the New York Action, by their attorney, Defendant

Bailey, brought the motion to dismiss that was ultimately granted in the New York Dismissal

Order.  (Bailey Decl., Ex. 2).  Reporting on the dismissal motion, the New York Post published a

brief article in the October 12, 2010 edition by Annie Karni entitled *Anti-Mosque Lawsuit*

*Slammed as Bigotry*.  (Bailey Decl. Ex. 3)  Although the article characterized the dismissal

motion as stating that the New York Action was "motivated by 'blind bigotry'" (*id.*), the article

did not contain the extensive quotes from the motion papers about which the Plaintiffs complain

in this action.  *Compare id. with* Compl. ¶ 9.

---

[2]     This Court may take judicial notice of facts on the public record, including records in other judicial
proceedings, in considering a motion to dismiss.  *Covad Communications Co. v. Bell Atlantic Corp.*, 407 F.3d 1220,
1222 (D.C. Cir. 2005); *Koker v. Aurora Loan Servicing, LLC*, -- F.Supp.2d --, 2013 WL 40320, *2 (D.D.C. 2013).

In the New York Action, Klayman made a January 5, 2011 cross-motion for sanctions objecting to the same language from the dismissal motion papers and New York Post article that the Plaintiffs complain of in this action.  (Bailey Decl., 4).  On April 5, 2011, Justice Billings orally denied Plaintiff's, ruling from the bench that:

> I'm going to deny the cross motion for sanctions, because all Mr. Bailey has disseminated here were public documents.
>
> It appears that each side's allegations are hardly controversial, but I don't believe that the allegations by defendants have risen to the level of threatening a party or counsel with violence.
>
> And I don't see any evidence through affidavits or otherwise that defendants or defendants' counsel's conduct has caused plaintiffs or witnesses on behalf of plaintiffs or on behalf of any party not to step forward for fear of being harmed.
>
> Similarly, I don't believe the conduct rises to a level of violation of rules of professional conduct.
>
> While I might not find all of the remarks entirely relevant to the specific motions that are before me, it's not that the statements were so far removed from the subject matter of this action.

(Bailey Decl., Ex. 5, at 3:23 - 4:15).  This ruling from the bench was confirmed in the New York Dismissal Order, in which Justice Billings held:  "The parties' and their attorneys' controversial statements related to their litigation do not amount to frivolous conduct.  Therefore the court denies plaintiff's cross-motion for sanctions . . . insofar as it is based on that conduct."  (Bailey Decl. Ex. 1, slip op. at 10).

Although Justice Billings further found that the New York Action's claims were "poorly pleaded" but "not entirely frivolous" (*id.*), she cautioned:  "Nevertheless, should plaintiff commence a further similar action, the history of this litigation may lead to a finding that he and his attorneys have engaged in vexatious, frivolous litigation."  (*Id.* At 11).

**B.**     **The Superior Court Action**

After Justice Billings' bench ruling foreclosed the ability of Plaintiffs to continue to

harass Defendant Bailey with the threat of sanctions, on October 11, 2011, Plaintiffs filed a

complaint against the Defendants herein in the District of Columbia Superior Court,

commencing an action entitled *Vincent Forras & Larry Klayman v. Iman Feisal Abdul Rauf &*

*Adam Leitman Bailey*, Civil Action No. 0008122-11 (Hon. Todd E. Edelman, J.) (the "Superior

Court Action") (Hoge Decl., Ex. 2).  After filing an Answer, Defendant Bailey made a December

19, 2011 motion for judgment on the pleadings, seeking dismissal of the Superior Court Action

(the "Superior Court Motion").  (See Hoge Decl., Ex. 3 [Edelman Order Granting Motion to

Dismiss] at 2.)  Defendant Rauf apparently was neither served nor participated in the Superior

Court Action.

Plaintiffs sought three extensions of time to respond to the Superior Court Motion, each

of which was granted, though in granting the third extension, Judge Edelman, after noting that

Plaintiffs' extension request was untimely, ordered that Plaintiffs' response papers would be due

February 21, 2012, and "no further extensions will be granted."  (Hoge Decl. Ex. 4 [order on 3rd

extension]).

On February 21, 2012 instead of responding to the Superior Court Motion as ordered by

Judge Edelman, the Plaintiffs commenced this action in federal district court and electronically

filed in the Superior Court a procedurally improper Notice of Dismissal.  (Hoge Decl. Ex. 5).

The Notice of Dismissal explained that purpose of the refiling of the action in federal court was

to avoid Anti-SLAPP Act liability under a then-recent district court decision, stating:

> Pursuant to Rule 41(a)(1) Plaintiffs, Vincent Forras and Larry Klayman,
> respectfully file this voluntary notice of dismissal without prejudice. The
> Complaint has been refiled in the U.S. District Court for the District of Columbia

due to the Court's recent decision in *3M v. Boulter*, No. 11-cv-1527 (RLW) (D.D.C.) [842 F.Supp.2d 85 (D.D.C. 2012)].  (*Id.*)

After Klayman was advised that dismissal by unilateral notice was impermissible under

D.C. Superior Court Civil Rule 41(a)(1) because Defendant Bailey had already filed his answer,

Plaintiffs moved for dismissal by court order under Superior Court Civil Rule 41(a)(2).[3]  In a

detailed Order, Judge Edelman noted:

> The Court sympathizes with the Defendant's frustration: the lawsuit against him is likely based on litigation activity that is privileged, and Plaintiffs only moved to dismiss and re-filed their lawsuit in federal court after obtaining multiple extensions of time to respond to Defendant's Motion for Judgment on the Pleadings.  Nonetheless, the Court cannot find, based on the record before it, that Defendant will suffer "real and substantial detriment" from the dismissal of this action. . . .
>
> Defendant also argues that voluntary dismissal will prejudice him because the re-filing of this action in federal court will deprive him of his ability to litigate a special motion to dismiss under the District's Anti-SLAPP Act, D.C. Code §§ 16-5501–16-5505. Although both parties appear to assume that it is settled law that the Anti-SLAPP Act does not apply to an action brought in the United States District Court, this is not at all the case: one District Judge has made such a finding, *3M Co. v. Boulter*, No. 11-cv-1527 (RLW), [842 F.Supp.2d 85,] 2012 U.S. Dist. LEXIS 12860, at *71–72 (D.D.C. Feb. 2, 2012), but that decision has no binding effect on any other trial judge and is presently on appeal.[4] In fact, in two United States District Court cases decided after *3M Co.*, District Court judges have considered the Anti-SLAPP Act to be substantive and thus applicable in federal court. *Sherrod v. Breitbart*, No. 11-477 (RJL), [843 F.Supp.2d 83,] 2012 U.S. Dist. LEXIS 19106, at *5–6 (D.D.C. Feb.15, 2012) (finding the Anti-SLAPP Act to be substantive, and therefore determining that it cannot be applied retroactively); *Farah v. Esquire Magazine, Inc.*, No. 11-cv-1179 (RMC), [863 F.Supp.2d 29,] 2012 U.S. Dist. LEXIS 76577, at *17–18 n.10 (D.D.C. June 4, 2012) (rejecting Plaintiff's argument that the Anti-SLAPP Act is procedural and thus inapplicable in federal court and applying the statute; acknowledging *3M Co.* but finding *Sherrod* and decisions from the First, Fifth, and Ninth Circuits more persuasive). The assertion that Plaintiffs have gained some advantage by re-filing their action in federal court is thus speculative at best.  (See Hoge Decl., Ex. 3 at 4-6.)

---

[3]     Even though dismissal by notice was improper, the clerk's office accepted the Notice of Dismissal for filing as of February 22, 2012, administratively closed the case and denied as moot the Superior Court Motion, actions which were later vacated by Judge Edelman.  (See Hoge Decl., Ex. 3, at 2-3).

[4]     The appeal of *3M v. Boulter* was subsequently dismissed. *3M v. Boulter*, 2012 WL 5897085 (D.C. Cir. 2012).

As a result, Judge Edelman granted dismissal of the Superior Court Action without prejudice and as a result, denied Defendants' Superior Court Motion as moot.  (*Id.* at 6).

## C.     The Federal Action

On February 21, 2012, the Plaintiffs commenced the Federal Action by filing the Complaint herein (Hoge Decl., Ex. 1), which was identical in substance to the Superior Court Action Complaint (Hoge Decl., Ex. 2).  Soon thereafter, Defendant Bailey moved to stay the Federal Action based on the pendency of the prior-filed Superior Court Action alleging  the same claims.  (ECF Docket No. 2)[5]  After briefing was complete (ECF Docket No. 3 & 4), this Court issued a March 28, 2013 Minute Order granting the stay and requesting that the parties file a joint status report by April 12, 2013.  In the Joint Status Report filed on that date, the parties advised this Court that the Superior Court action had been dismissed, and requested that Defendants have one month from the date of the report to file this motion.

As such, Defendant Adam Leitman Bailey now moves to dismiss this Action and for costs and attorneys' fees.

## ARGUMENT

### POINT I:  BY NOT STATING THE PARTIES' CITIZENSHIP, THE PLAINTIFFS HAVE FAILED TO INVOKE DIVERSITY JURISDICTION

Because this action does not involve a federal question or other basis for jurisdiction, Plaintiffs have brought this action under 28 U.S.C. § 1332, claiming diversity jurisdiction. (Compl., ¶ 1)  As the D.C. Circuit has recognized, however:  "Because federal courts are of limited jurisdiction, there is a presumption against the existence of diversity jurisdiction. Accordingly, the party seeking the exercise of diversity jurisdiction bears the burden of pleading

---

[5]     Plaintiffs have not filed proofs of service of the Summons and Complaint on any party as required by Fed. R. Civ. P. 4(m).  There is no evidence that Defendant Rauf was ever served in this Action (or the Superior Court Action, for that matter).

the citizenship of each and every party to the action." *Loughlin v. U.S.*, 393 F.3d 155, 172 (D.C.

Cir. 2004) (*quoting Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir.1983).

Here, the Plaintiffs have not alleged the citizenship of *any* of the parties to this Action, much less

*every* party.[6]  As such, the Plaintiffs have not properly invoked this Court's diversity jurisdiction,

and this Action must be dismissed for lack of subject matter jurisdiction.

### POINT II:  PERSONAL JURISDICTION CANNOT BE EXERCISED OVER DEFENDANT BAILEY

The District of Columbia's long-arm statute, D.C. St. § 13-423, is coextensive with the

reach of personal jurisdiction permitted under the Due Process Clause of the United States

Constitution.  *Harris v. Omelon*, 985 A.2d 1103, 1105-1106 (D.C. 2009); *Jackson v. Loews*

*Washington Cinemas, Inc.*, 944 A.2d 1088, 1092-1093 (D.C. 2008); *Environmental Research*

*Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 810-11 (D.C.1976).  It is well

settled law that the Due Process clause requires that in order to subject a defendant to judgment

in personam, if he not be present within the forum locality, he must have certain minimum

contacts with the forum locality such that the maintenance of the suit does not offend "traditional

notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*,

---

[6]        The Plaintiffs attempted to partially comply with Local Civil Rules 5.1(e)(1) & 11.1 by listing addresses of the parties in the caption of the Complaint.  Each of the addresses used, however, is a business address for the party and not the "residence address" as required by the Rules, much less an allegation of the party's citizenship.  The address for Plaintiff Forras, 54 Danbury Road, Suite 1776, Ridgefield, CT 06877 is the address of a UPS Store apparently used by Forras as a mail drop, and not a residence.  Website of UPS Store #0465 <http://www.theupsstorelocal.com/0465/> (visited May 9, 2013) (Bailey Decl., Ex. 12).  Significantly, the residence address used for Forras in the caption of the Superior Court Action Complaint (*see* D.C. Superior Court Rule 10-I(b)) is 257 Church Street, New York, New York 10013 (Hoge Decl., Ex. 2), an address that was identified in the New York action as being at least a part-time residence of Forras, and the essence of Forras's claim in the New York Action is that the proposed community center had an effect on him personally as a nearby resident.  (Bailey Decl. Ex. 5, at 8:15-18).  Nowhere in the Complaint is the citizenship or residence of Forras alleged, and if he did in fact have his primary residence at this New York City address, or any other address in New York State at the time of the filing of the Complaint, diversity jurisdiction would be destroyed.

Similarly, Plaintiff Klayman admits that the Washington, D.C. address in the caption is his business address, and that he formerly (not currently) resided in the District of Columbia.  (Compl. ¶ 2).  The address given for Defendant Rauf of 51/45 Park Place, New York, New York is the address of the proposed community center at issue in this action, an organization with which he has cut ties prior to the filing of this action.  And finally, the address given for Defendant Bailey is his office address, not his residence.

*Office of Unemployment Compensation   Placement, et al*, 326 U.S. 310, 316 (1945).  The

Supreme Court wrote that whether due process is satisfied depends on the "quality and nature of

the activity in relation to the fair and orderly administration of the laws which it was the purpose

of the due process clause to insure.  That clause does not contemplate that a state may make a

binding judgment in personam against an individual or corporate defendant with which the state

has no contacts, ties or relations." *Id.* at 319.

   In *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court

further elaborated on the minimum contacts standard:

> The concept of minimum contacts… can be seen to perform two related,
> but distinguishable functions.  It protects the defendant against the burdens
> of litigating in a distant or inconvenient forum.  And, it acts to ensure that
> the States through their courts, do not reach beyond the limits imposed on
> them by their status as coequal sovereigns in a federal system.
>
> The protection against inconvenient litigation is typically described in
> terms of "reasonableness" or "fairness."  We have said that the
> defendant's contacts with the forum State must be such that maintenance
> of the suit "does not offend 'traditional notions of fair play and substantial
> justice'."  The relationship between the defendant and the forum must be
> such that it is "reasonable… to require the corporation to defend the
> particular suit which is brought here."  Implicit in this emphasis on
> reasonableness is the understanding that the burden on the defendant,
> while always a primary concern, will in an appropriate case be considered
> in light of other relevant factors, including the forum State's interest in
> adjudicating the dispute, the plaintiff's interest in obtaining convenient
> and effective relief… ; the interstate judicial system's interest in obtaining
> the most efficient resolution of controversies; and the shared interest of the
> several States in furthering fundamental substantive social policies."

   The Complaint herein alleges absolutely no connection between Bailey and the District of

Columbia.  Indeed, the only apparent way that the occurrences herein touch on the District of

Columbia at all are that an article was published in a New York newspaper that has some limited

circulation within the District.  In fact, Defendant Bailey has virtually no contacts with the

District of Columbia.  He owns no property in the district, he conducts no business in the district,

and he is not licensed to practice law in the district.  In fact, prior to the commencement of this

action, Defendant Bailey had not visited the District of Columbia for more than two decades, and

otherwise has no personal or professional contacts with the District of Columbia.  (Bailey Decl.,

¶¶ 5-11).  As such, there is no allegation and can be no showing that Defendant Bailey had any

contacts, much less "minimum contacts" with the District of Columbia such that it is proper for

this Court to exercise personal jurisdiction over him.

Further, the Plaintiffs' ability to obtain convenient and effective relief does not depend on

this action being adjudicated in the District of Columbia.  All the facts and circumstances giving

rise to this action took place in New York.  And, the Plaintiffs cannot claim that it is

inconvenient for them to bring the suit in New York because they experienced no such

inconvenience in bringing the underlying New York Action in New York, just a little over a year

ago.  Thus, personal jurisdiction can neither be exercised over Defendant Bailey by the District

of Columbia under Constitutional constraints nor under prudential ones.

### POINT III:   PLAINTIFFS' CLAIMS ARE TIME-BARRED BY THE STATUTE OF LIMITATIONS

The Complaint herein, filed on February 21, 2012, alleges four counts:  (1) defamation,

(2) false light, (3) assault, and (4) intentional infliction of emotional distress.  Under both New

York and D.C. law, these claims have a one year statute of limitations running from the first

publication of the allegedly defamatory statements, which occurred on or before October 12,

2010.  As such, all of Plaintiffs' claims are time-barred.

Under D.C. Code §12-301(4), the statute of limitations for defamation and assault are

expressly set at one year, and under the "single publication" rule, defamation-based claims

accrue on the date the allegedly defamatory statements are first published.  *Mullin v. Washington

Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001).  Although false light and intentional infliction

of emotional distress are not expressly mentioned in D.C. Code §12-301(4), the D.C. courts hold that when such claims are "intertwined" with defamation claims, they share the one year statute of limitations.  *Id.* (affirming finding that false light and intentional infliction of emotional distress claims were time-barred as intertwined with defamation claims); *Saunders v. Nemati*, 580 A.2d 660, 662 (D.C. 1990) (intentional infliction of emotional distress has one year limitations period when claim is intertwined with claims with that limitation period set by statute); *Bond v. U.S. Department of Justice*, 828 F.Supp.2d 60, 78 (D.D.C. 2011) (intentional infliction of emotional distress claim and false light claims intertwined with defamation allegations and thus time-barred under one year statute of limitations).

Under New York Civil Practice Law and Rules ("CPLR") 215(3), the limitations period for intentional torts is one year.  Although "assault, . . . libel, slander, [and] false words causing special damages" are expressly mentioned in CPLR 215(3), New York courts hold that intentional infliction of emotional distress claims also fall within its ambit.  *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d 478, 491, 868 N.E.2d 189, 197, 836 N.Y.S.2d 509, 517 (2007) (dismissing intentional infliction of emotional distress claim based on CPLR 215 one year statute of limitations); *Wilson v. Erra*, 94 A.D.3d 756, 756, 942 N.Y.S.2d 127, 129 (App. Div. 2d Dept. 2012) ("causes of action sounding in defamation and intentional infliction of emotional distress are governed by a one-year statute of limitations").

As such, the claims brought by Plaintiffs in their February 21, 2012 Complaint, each of which accrued on or before October 12, 2010, are all barred by the applicable one year statutes of limitations.

**POINT IV:   DEFENDANT'S STATEMENTS WERE MADE DURING THE COURSE
OF A JUDICIAL PROCEEDING AND ARE THUS PRIVILEGED**

It is well-settled law that an allegedly defamatory statement made during the course of a judicial proceeding cannot be the basis of a defamation action so long as the allegedly defamatory statement has some relation to the proceeding.  *Mazanderan v. McGranery*, 490 A.2d 180 (D.C. 1984); *Sturtevant v. Seaboard Service System, Ltd.*, 459 A.2d 1058, 1059 (D.C. 1983).  Such statements are absolutely privileged.  *Id.*  The law is the same in New York, the original forum jurisdiction where the statements were made. *See Rosenberg v. MetLife, Inc.,* 8 N.Y.3d 359, 365, 866 N.E.2d 439, 442, 834 N.Y.S.2d 494, 497 (2007); *Panghat v. New York Downtown Hospital,* 85 A.D.3d 473, 474, 925 N.Y.S.2d 445, 446 (App. Div. 1st Dept. 2011).

The allegedly defamatory statements cited by Plaintiffs in their Complaint are taken directly from the memorandum of law and affirmation in support of the Defendants' motion to dismiss in the New York Action.  Indeed, the Complaint expressly acknowledges this, repeatedly noting that the allegedly injurious statements were made by publication of "court pleadings" and by providing those "court pleadings" to a newspaper.  (Compl., ¶¶ 4, 5, 8, 9, 10 & 11).  The New York Action motion to dismiss centered on the fact that the Plaintiff had failed to plead any cognizable cause of action in his complaint, and that the Action was brought exclusively because Plaintiffs had or have an aversion toward Islam.  (Bailey Decl, Ex. 2).  Although Plaintiffs make a conclusory allegation that the statements made in the New York Action were unrelated to that proceeding, such a claim was expressly rejected by Justice Billings when she rejected Plaintiffs' sanctions claim based on the same statements in the New York Action, finding that "it's not that the statements were so far removed from the subject matter of this action" (Bailey Decl. Ex. 5 at 4:13-15), and that the parties' "controversial statements" were "related to their litigation" and

thus not a basis for sanctions.  (Bailey Decl., Ex. 1, Slip Op. at 10).  As such, the statements are

absolutely privileged and cannot be used as a basis for Plaintiffs' claims.

**POINT V:      DEFENDANT'S STATEMENTS ARE PROTECTED BY THE DISTRICT OF COLUMBIA'S ANTI-SLAPP ACT**

The Plaintiffs made clear in their February 21, 2012 Notice of Dismissal that they were

seeking dismissal of the Superior Court Action to avoid application of the D.C. Anti-SLAPP Act,

"due to the Court's recent decision in *3M v. Boulter*," which had been decided earlier that month.

(Hoge Decl., Ex. 9).  In *Boulter*, Judge Robert L. Wilkins of this Court held that the Anti-SLAPP

Act's special motion to dismiss provisions were inconsistent with the Federal Rules of Civil

Procedure, and thus could not be applied in federal courts, disagreeing with the several Circuits

that had examined similar state Anti-SLAPP statutes.  842 F.Supp.2d at 92-111.  Since then,

however, two other judges of this Court have disagreed, finding that federal courts could

properly apply the D.C. Anti-SLAPP Act.  Most significantly, in a June 4, 2012 decision in a

case also brought by Larry Klayman, *Farah v. Esquire Magazine, Inc.*, 863 F.Supp.2d 29, 36-39

(D.D.C. 2012), Judge Rosemary M. Collyer of this Court found the Anti-SLAPP Act applicable

in federal court, and held that Klayman's case should be dismissed as violating the Act.[7]

Similarly, in *Sherrod v. Breitbart*, 843 F.Supp.2d 83, 84-86, Judge Richard J. Leon of this Court

found that the Anti-SLAPP Act was substantive, and therefore applicable in federal court. [8]

Likewise, the three federal Circuits to have considered the question have found that similar

motion to dismiss provisions in Anti-SLAPP statutes could properly be applied in federal courts.

*Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir.2010); *Henry v. Lake Charles American Press, LLC*,

---

[7]        *Farah* has been appealed to the District of Columbia Circuit under Docket Number 12-7055, and briefing is complete but oral argument has not yet been scheduled.  By consent of the parties, consideration of attorney's fees is being held in abeyance pending the appeal.  *Farah v. Esquire Magazine, Inc.*, Civil Action No. 11-cv-1179 (RMC), Minute Order of June 11, 2012 (D.D.C. 2012).

[8]        In *Sherrod*, the court denied the Anti-SLAPP Act motion to dismiss on the grounds that the action was filed before the Anti-SLAPP Act became effective.  *Sherrod* is on appeal to the District of Columbia Circuit under Docket Number 11-7088, and oral argument was held on March 15, 2012.

566 F.3d 164, 181-82 (5th Cir.2009); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir.1999).

Further, the legislative history demonstrates that the Anti-SLAPP Act was intended to apply to precisely this type of action, and that it confers a substantive right of the sort that a federal court sitting in diversity must consider. *See Erie v. Tompkins*, 304 U.S. 644 (1938). According to the report of the Council of the District of Columbia Committee on Public Safety and the Judiciary, the law "incorporates substantive rights with regard to a defendant's ability to fend off lawsuits filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view."[9]  As such, this Court may properly consider and grant a "special motion to dismiss" under D.C. Code § 16-5502.[10]

Plaintiffs' Complaint pleads four purported claims for relief, all arising from the statements made in the New York Action motion to dismiss.  Because the statements were made in a court document in the New York Action filed by Defendant Bailey related to a highly public and debated issue, namely the construction of an Islamic cultural center near the site of Ground Zero – which became popularly known as the "Ground Zero Mosque" – Plaintiffs' claims fall squarely under the Anti-SLAPP Act.

First, as more fully described above, Plaintiffs Forras and Klayman are public figures. Second, the statements at issue concern the construction of an Islamic cultural center near Ground Zero.  It was featured in segments on ABC news and FOX news, and in articles in the New York Times, the Boston Globe, the Washington Post and other publications throughout the

---

[9]    Council of the District of Columbia, Committee on Public Safety and the Judiciary Committee Report, Report on Bill 18-893, Anti-SLAPP Act of 2010 (November 18, 2010), *available at* www.dacouncil.washingtondc.us.

[10]10    Although D.C. Code § 16-5502 provides that a special motion to dismiss should be filed within 45 days of the service of the claim, here the Defendant moved promptly to stay this Federal Court Action because of the pendency of the Superior Court Action.  As such, and considering the circumstances under which the Federal Action was brought, the time to file the special motion to dismiss should be equitably tolled and this motion should be considered timely.

nation. The proposed building of an Islamic Center in proximity to the 9/11 Ground Zero led to public debate about the right to build a house of worship, freedom of religion, freedom of speech and tolerance, which are clearly matters of public significance.  Allowing this suit to continue would effectively serve only to punish Defendant Bailey for vocally advocating the First Amendment and property rights of the defendants in the New York Action, which is exactly what the Anti-SLAPP Act was enacted to prevent.  As such, the claims of Plaintiffs here "arise[] from an act in furtherance of the right of advocacy on issues of public interest," and therefore must be dismissed.  D.C. Code § 16-5502.[11]

### POINT VI:    DEFENDANT'S STATEMENTS ARE PROTECTED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

In *New York Times v. Sullivan*, 376 US 254 (1964) the Supreme Court held that the First Amendment prohibited libel claims by public officials from going forward without a showing, by the plaintiff, of actual malice – that the statement was made with knowledge that it was false or with reckless disregard of the truth.  The purpose behind this standard is to prevent the chilling of robust debate and discussion over matters of public significance, which form an essential part of our constitutional tradition.  *See Hustler Magazine, Inc. v. Falwell,* 485 US 46, 50 (1988).  The Court subsequently held that the actual malice standard applies to public figures as well. *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967).

As discussed in Part A of the Statement of Facts above, Plaintiffs Forras and Klayman are both public figures, courting publicity and providing public commentary on matters related and unrelated to the issues underlying this action, as well as both being former candidates for the U.S. Senate.  (Bailey Decl. Exs. 6-10); *see also Klayman v. Segal*, 783 A.2d 607.

---

[11]    Whether or not this Court finds that it should apply the standards of the Anti-SLAPP Act special motion to dismiss, the Complaint herein must nevertheless be dismissed under Federal Rule of Civil Procedure 12(b).  *See Farah*, 863 F.Supp2d at 39-40 (after finding complaint dismissible under Anti-SLAPP Act, also finding it dismissible under Rule 12(b)).

Further, the statements complained of were made in connection with the construction of

an Islamic cultural center near Ground Zero.  Not only was this issue the subject of the litigation

in the New York Action, but it has led to serious debate in this country concerning issues such as

the right to build a house of worship, freedom of religion, freedom of speech and religious and

ethnic tolerance, which are clearly matters of public significance.  And, Plaintiffs have made no

showing of the falsity of any of Defendant Bailey's statements,[12] much less that Defendant

Bailey acted with actual malice in making such statements.  As such, Defendant Bailey's

statements are protected by the First Amendment to the United States Constitution.

**POINT VII:   PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA* AND COLLATERAL ESTOPPEL**

The doctrines of *res judicata* and collateral estoppel preclude the relitigation of the same

claim between the same parties.  The District of Columbia courts have held that in determining

whether *res judicata* applies, the courts consider: (1) whether the claim in the first action was

finally adjudicated; (2) whether the present claim is the same claim as raised in the prior action

or which might have been raised in the prior action; and (3) whether the party against whom the

claim is asserted was a party or in privity with a party in the prior case."  *Calomoris v.

Calomoris*, 3 A.3d 1186, 1190 (D.C. 2010); *Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C. 2008);

*Koker*, 2013 WL 40320 at *5.

In the New York Action, on or about January 5, 2011, Plaintiffs filed a cross-motion for

sanctions against Defendant Bailey, seeking monetary sanctions be granted against Defendant

Bailey for the exact same statements complained of in this action. (Bailey Decl., Ex. 4).  On

---

[12]     The Complaint in this action falsely accuses Bailey of accusing the plaintiffs of being Nazis.  The actual statement from Defendant Bailey was in motion papers in which Bailey wrote about World War II, stating, "we were all united under a single banner pledged to eradicate the very kind of religious intolerance we see in Plaintiff, represented in those years by the Third Reich and those aligned with it."  Clearly therefore Defendant Bailey was comparing the Plaintiffs' religious intolerance to that of the Nazis and was not characterizing the Plaintiffs as Nazis themselves.  It was therefore also clearly a non-actionable statement of opinion.

April 5, 2011, Justice Billings, considered and denied Plaintiffs' motion for sanctions in a ruling

from the bench in which she stated:  "I don't believe that the allegations by defendants have risen

to the level of threatening a party or counsel with violence.  ¶  And I don't see any evidence

through affidavits or otherwise that defendants or defendants' counsel's conduct has caused

plaintiffs or witnesses on behalf of plaintiffs or on behalf of any party not to step forward for fear

of being harmed."  (Bailey Decl., Ex. 5, 4:2-9).  Justice Billings confirmed this denial of

Plaintiffs' sanctions motion in her September 26, 2012 Decision and Order, noting "the parties'

and their attorneys' controversial statements related to their litigation do not amount to frivolous

conduct."  (Bailey Decl., Ex. 1, Slip Op. at 10).  Justice Billings' September 26, 2012 Decision

and Order was a final determination of the New York Action that was not appealed by the

Plaintiffs.  (Bailey Decl., ¶ 16).

 As such, Plaintiffs' claims were finally adjudicated by Justice Billings.  Plaintiffs' claims

for assault and intentional infliction of emotional distress were raised in the motion for sanctions

and Plaintiffs' claims for defamation and false light could have been raised in the motion for

sanctions as they arise out of the same statements complained of in such motion, and parties are

the same as in the New York Action.  As such, Plaintiffs' claims are barred by the doctrines of

*res judicata* and collateral estoppel.

 The law is well established that *res judicata* is predicated on the underlying operative

facts and the fact that a would-be plaintiff pursues a new or different theory of recovery on those

already adjudicated facts does not allow the second action to survive.  The newness of the theory

does not rescue the second action from the preclusive effect of the earlier judgment or order.  *See*

*Parker v. Martin*, 905 A.2d 756, 763 (D.C. 2006); *Stutsman v. Kaiser Foundation Health Plan of*

*the Mid-Atlantic States, Inc.*, 546 A.2d 367, 370 (D.C.1988).   Accordingly, Plaintiffs are

precluded from bringing the claims they assert herein by the doctrines of *res judicata* and collateral estoppel.

### POINT VIII:  DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES BECAUSE OF PLAINTIFFS' VEXATIOUS AND IMPROPER LITIGATION CONDUCT

As discussed above, this Action and the Superior Court Action constitute class strategic lawsuits against public participations, SLAPP suits, brought not to vindicate legitimate legal rights, but rather to stifle Defendants' public advocacy on what was then a matter of intense local and national public debate and controversy.  More than just being SLAPP suits, both Actions in the District of  Columbia were brought with claims that were patently meritless on both a legal and factual basis, and for the vexatious purpose of adding to the Defendants' litigation burden after receiving an adverse ruling in the New York Action.  Most perniciously, when the Defendants realized that they were in an untenable position in the Superior Court Action, with their Complaint inevitably to be dismissed with prejudice under the Anti-SLAPP Act with the concomitant assessment of attorneys' fees against them, they sought to dismiss that action and refile the same patently deficient Complaint in this Court.  As such, under the Anti-SLAPP Act, 28 U.S.C. § 1927, and this Court's inherent power to prevent abuse of the judicial process, Defendants should be awarded judgment against the Plaintiffs for  the attorneys' fees they have incurred in connection with both the Superior Court Action and this Federal Action.[13]

The D.C. Anti-SLAPP Act expressly provides that:  "The court may award a moving party who prevails, in whole or in part, . . . the costs of litigation, including reasonable attorney fees."  D.C. Code § 16-5504(a).  As such, this Court should award Defendants their attorneys' fees in this Action as well as those incurred in the Superior Court Action, because it was equally

---

[13]     The Defendants have not made a separate motion under Federal Rule of Civil Procedure 11(c)(2), and thus are not expressly requesting sanctions under Rule 11.  The Defendants note, however, that in addition to the grounds for award of attorneys' fees set forth herein, the Court has the power to order a party or counsel to show cause why litigation conduct does not violate Rule 11.

subject to the Anti-SLAPP Act and, as Judge Edelman recognized in permitting the Superior

Court Action to be dismissed, much of the legal effort undertaken by the Defendants in making

their Superior Court Motion can be – and was – reused in making this motion before this Court.

(Hoge Decl., Ex. 3, at 4-5); *see also Dean v. NBC Universal*, Case No. 2011 CA 006055 B,

Memorandum and Order filed June 25, 2012 (D.C. Super Ct. 2012) (attached as Hoge Decl.,

Exhibit 6) (when Klayman sought to dismiss similar action in Superior Court in favor of refilled

action in federal court on same date as Klayman filed Superior Court Action dismissal notice

herein, conditioning dismissal without prejudice on payment of Superior Court attorneys' fees).

28 U.S.C § 1927 provides that where an attorney "who so multiplies the proceedings in

any case unreasonably and vexatiously may be required by the court to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  This

Court may award such sanctions when it finds that "the offending attorney's multiplication of the

proceedings was both 'unreasonable' and 'vexatious' . . . [and] evidence of recklessness, bad

faith, or improper motive must be present."  *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d

899, 906 (D.C. Cir. 1998) (citations and internal quotations omitted); *see also Wallace v.

Skadden, Arps, Slate Meagher & Flom, LLP*, 362 F.3d 810, 813 (D.C. Cir. 2004).  In addition,

district courts have the inherent power to issue sanctions and award attorneys' fees for bad faith

litigation conduct.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51 (1991).  Because Plaintiffs, in

particular Plaintiff Klayman who acted as both plaintiff and attorney, have acted unreasonably,

vexatiously, recklessly, in bad faith and for an improper motive in bringing both the Superior

Court Action and this Federal Action, and particularly in refiling the Superior Court Action in

this Court, an award of sanctions and attorneys' fees is warranted under 28 U.S.C. § 1927 and

this Court's inherent power to prevent litigation abuse.

Indeed, sanctions and attorneys' fees are particularly warranted in the proceedings herein given the long history of bad-faith and sanctionable conduct undertaken by Plaintiff Klayman. Indeed, in the New York Action Justice Billings imposed a $1,500 sanction against Klayman for failing to attend a scheduled hearing, and though she generally (and with apparent reluctance) rejected other sanctions against plaintiff by finding that his "conduct in filing the claims was not entirely frivolous", she cautioned:  "Nevertheless, should plaintiff commence a further similar action, the history of this litigation may lead to a finding that he and his attorneys have engaged in vexatious, frivolous litigation."  (Bailey Decl., Ex. 1, Slip Op. at 10-12); *see also Klayman v. Judicial Watch, Inc.*, 802 F.Supp.2d 137,139-142 (D.D.C. 2011) (summarizing "Klayman's Past Litigation Misconduct" within case and awarding further sanctions); *Klayman v. Barmak*, 2009 WL 4722803 (D.D.C. 2009) (awarding summary judgment in favor of defendants for Klaymayn's unexcused failure to comply with court-ordered deadlines, and noting that Klayman had not paid prior discovery sanction award); *Klayman v. Luck*, 2012 Ohio 3354, 2012 WL 3040043, ¶¶ 39-43 (Ohio Ct. App. 2012) (affirming substantial attorneys' fees award against Klayman on finding, *inter alia*, that Klayman repeatedly interfered with legitimate discovery requests and "purposefully prolonged litigation"); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 138 F.3d 33 (2d Cir. 1998) (affirming sanctions against Klayman for allegations of bias that were "prejudicial to the administration of justice"); *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550, 560-562 (Fed. Cir. 1996) (affirming sanctions against Klayman).

Accordingly, because of Plaintiffs' abusive and vexatious conduct throughout the course of the litigation they have brought in the District of Columbia, Defendants should be awarded the

full attorneys' fees they have incurred in defending both this Action and the Superior Court Action.

## CONCLUSION

For the foregoing reasons, this Court should grant the motion of Defendant Adam Leitman Bailey to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), (2), (3) & (6) and the D.C. Anti-SLAPP Act, and for the award of costs and attorneys' fees pursuant the D.C. Anti-SLAPP Act, 28 U.S.C. § 1927 and the inherent power of this Court to prevent abuse of the judicial process, as well as grant such other relief as may be just and proper.


Respectfully Submitted,

DEFENDANT ADAM LEITMAN BAILEY
By Counsel


CROWLEY, HOGE & FEIN, P.C.

By: /s/ Christopher G. Hoge
      Christopher G. Hoge   #203257

Attorneys for Defendant Bailey
1730 Rhode Island Avenue, N.W.
Suite #1015
Washington, D.C.  20036
(202) 483-2900
(202) 483-1365 (FAX)
chfcgh@aol.com

**<u>CERTIFICATE OF SERVICE</u>**

      I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 13th day of May, 2013 to:

      Larry Klayman
      Klayman Law Firm
      2020 Pennsylvania Avenue, N.W..
      Suite 345
      Washington, D.C.  20006
      leklayman@gmail.com


                    /s/ Christopher G. Hoge
                    Counsel