IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VINCENT FORRAS,** *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **IMAM FEISAL ABDUL RAUF, et al.** <br><br> Defendants. | Civil Action Number: <br> 1:12-cv-00282-BJR <br><br> Judge Barbara J. Rothstein |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Plaintiffs respectfully move the Court to deny the motion of the Defendants for attorney fees brought pursuant to D.C. Code § 16–5501, *et. seq.*, or in the alternative to award only such smaller sum of attorneys' fees as is appropriate, or in the alternative to stay consideration of attorney fees until after Plaintiffs' appeal of the Special Motion to Dismiss.  Note that the Plaintiffs also separately move the Court to reconsider the Court's prior decision on the Special Motion to Dismiss under D.C.'s Anti-SLAPP Act and ask the Court to consider those grounds as additional reasons to oppose the Defendants' motion to order payment of attorney fees.

**I.      INTRODUCTION**

First, the Court should stay consideration of attorney fees pending appeal.

Second, the Court should deny in its discretion the award of attorney fees where – as here – the party moving for attorney fees are violating the purpose of the Anti-SLAPP Act and seeking to silence opinions they disagree with on legitimate "issues of public interest."

Third, Defendant Adam Leitman Bailey's motion for attorneys' fees is itself in

contradiction to D.C.'s Anti-SLAPP statute, which must be dismissed under the Anti-SLAPP Act. Bailey declares, in his own sworn affidavit, that he is embarked on a campaign to silence people like Vincent Forras and Larry Klayman. The motion for attorney fees is itself Bailey's attempt to silence discussion of and advocacy concerning "issues of public interest."

Fourth, the amount of attorney fees requested is unreasonable and excessive. Defendant Bailey's Special Motion rests upon his analysis that the Complaint does not have a likelihood of prevailing on the merits. Yet Bailey claims to have incurred $73,374.35 of attorneys' fees and costs to defend a case which – as a fundamental component of Bailey's Special Motion to Dismiss – Bailey credits as having no merit. Only attorney fees incurred for filing a Special Motion to Dismiss can be reasonable, because all other actions are automatically stayed under D.C.'s Anti-SLAPP Act. Bailey's requested attorney fees are not reasonable in that it exceeds a reasonable amount.

Fifth, the Court should also consider all the grounds and arguments asserted in Plaintiffs' Motion for Reconsideration as additional reasons to exercise discretion to choose to decline the motion to order payment of attorney fees. Whether or not the Court reverses its decision, the discretionary decision whether to award attorney fees should include considering the problems with the Defendants' position set forth in Plaintiffs' Motion for Reconsideration.

## II.     COURT SHOULD STAY CONSIDERATION ON APPEAL

The Court should stay the question of attorney fees awaiting appeal, rather than scouring through the billing details of the motion for attorney fees if that might not be necessary. The Court's time would not be well-spent reviewing what attorney fees and related work is reasonable if the appellate court then overturns the decision on the Special Motion to Dismiss. Judicial economy would best be served by reviewing the attorney fees only if necessary if the

appellate court upholds the Special Motion to Dismiss. Where the Court has stated that the District of Columbia has not construed its own statute to provide guidance, particular caution and restraint would be appropriate.

### III.   COURT SHOULD DECIDE TO DENY ATTORNEY FEES

D.C. Code § 16-5504 provides: "(a) The court ***may*** award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502 or § 16-5503 the costs of litigation, including reasonable attorney fees." *(Emphasis added.)*

Evaluating all of the factors and circumstances addressed herein and in the Motion for Reconsideration, this Court should decide to decline to order payment of attorney fees or at least not order the maximum amount of attorney fees that might be awarded, for the reasons examined in further detail below.

Defendant Bailey and his clients are the cause of their own problem. In effect, Bailey has "unclean hands" asking now for attorney fees, to borrow a concept from equity. While writing for his real estate developer client Soho Properties, Bailey embarked on *ad hominem* smears irrelevant to the New York lawsuit, by calling New York City firefighter Vincent Forras a "nationally-recognized bigot" and "neo-Nazi" with a "poisoned mind" lacking in "rationality."

Bailey had no need to violate the norms of civility required of a member of the Bar by including the *ad hominem* smears in the New York lawsuit. The dispute at issue arose from conduct that is questionable if not an outright violation of the norms for the legal profession.

Rule 3.3(f) of the New York Rules of Professional Conduct (as amended May 4, 2010) require that:

> Rule 3.3(f) In appearing as a lawyer before a tribunal, a lawyer shall not:
>
> * * *

3

      (2) engage in undignified or discourteous conduct;

* * *

  Bailey, Rauf's, and Soho Properties' defamation was fundamentally different from tough advocacy, including because it was not directed to any issues in the lawsuit.  The defamation was aimed at generally smearing and discrediting Plaintiffs as spokesmen of public opinions with which Bailey disagrees.  Unlike tough advocacy, the *ad hominiem* smears sought to prevent consideration of the law and the evidence on its merits by shaming, intimidating, silencing, and discrediting the speaker with whom Bailey disagrees, so that Forras' discussion of and advocacy about an "issue of public interest" would not be heard or would be subject to ridicule.

  As shown by the examples in Defendant's affidavit, attached as Exhibit A, Bailey offers – in an official court proceeding – a stirring political speech, but nothing relevant to the causes of action that the Plaintiff Vincent Forras actually filed in the New York court.  Bailey's intemperate, uncivil, and irrelevant smears of bigotry appear in Paragraphs 10 and 11 of Exhibit A among other places.  There is absolutely nothing in the Plaintiff's Complaint in New York concerning disagreement with any particular religion, yet in Paragraphs 18(a), (b), and (c) of Exhibit A,  Bailey attacks what no one argued in the Complaint.  Indeed, Bailey's Affirmation in Exhibit A is actually lacking in candor to the New York Court.  Bailey deliberately and dramatically misled the New York Court, and the audiences outside of court, as to what the causes of action were.  Bailey represented to the New York court and outside audiences that Vincent Forras was by his Complaint attacking a particular religion, which is a lie.

  Strikingly absent from Vincent Forras' Complaint in the New York lawsuit, attached as Exhibit B, is anything related to any views about all or most Muslims or about any religion.  Bailey's smears did not address a legitimate issue in the case but were a tactic of censorship on

an "issue of public interest."  Thus Defendant Bailey created his and his clients own problem by defaming Vincent Forras as a "nationally recognized bigot" and "neo-Nazi" with a "poisoned mind" and lacking in "rationality," and similar smears against attorney Klayman.

In fact, Forras challenged in the New York lawsuit the building of a mosque named "Cordoba House" as creating a public nuisance attractive to further acts of terrorism at the World Trade Center site.  Already, in both 1993 and 2001, terrorists with the same goals and ideology attacked the World Trade Center.  Forras challenged whether placing a mosque named for the Muslim invasion of Cordoba, Spain – in which mosques were built on top of the ruins of Jewish synagogues and Christian cathedrals and churches in a pattern similar to the "Ground Zero" site – at the same site might encourage some terrorists to launch similar, future attacks.  Vincent Forras' Complaint in New York focused on the project attracting terrorists, not on religion.

Although terrorists attacks already occurred in 1993 and 2001, Bailey smeared Forras as a "bigot" and a "neo-Nazi" with a "poisoned mind" for thinking that the risk of a third attack at the same site would be increased by the Cordoba House.

Bailey's defamation of Forras was similar to a particular night club being the scene of repeated violent outbreaks, yet smearing a neighborhood activist as a bigot with a poisoned mind and irrational for warning that relaxing government regulations to allow the night club to stay open later and with less security might make a demonstrated problem worse.

The Court should also note that Defendant Bailey's attorney fees will ultimately be paid by the real estate development firm Soho Properties.  Bailey was originally engaged as the attorney for a wealthy New York real estate development firm Soho Properties, which was undertaking a $100 million real estate project in downtown Manhattan.  The New York Complaint – although reserving the right to amend to be more specific about the legal entities –

5

clearly and unmistakably sues as Defendants "Soho Properties" and "Cordoba House" and "Cordoba Initiative" as owners and developers of the real estate in the $100 million project.

In the Declaration of Christopher G. Hoge, paragraph 4, submitted by Defendant Bailey in his request for attorney fees, Hoge recites that Defendant Bailey was the attorney representing "Imam Feisal Abdul Rauf *and others* in an action the Supreme Court of the State of New York, New York County entitled *Forras v. Rauf*." *(Emphasis added.)*

Presumably, Defendant Bailey has a fee agreement with Soho Properties which will require Soho Properties to pay all of Bailey's legal fees and costs flowing from these events.

By contrast Vincent Forras is a retired New York City firefighter without the same level of means – and without the prospect of real estate development profits. Soho Properties does not need to have help paying routine legal fees for a planned $100 million real estate project. Plaintiff Vincent Forras, however, and other citizens advocating on "issues of public interest" would be financially ruined.

The Court should consider all of these factors in deciding not to award attorney fees, and should also consider all of the factors that follow in all of the sections below, as well:

## IV.  DEFENDANT'S MOTION FOR ATTORNEY'S FEES VIOLATES PURPOSE OF THE D.C. ANTI-SLAPP STATUTE

The Court should decide not to award attorney fees or award only a nominal sum, because here the Anti-SLAPP motion is being used to silence discussion of issues of public interest.  That is, ordering attorney fees would contradict and undermine the purposes of the Act.

Bailey proclaims in his New York affidavit that in these actions Bailey is "**pledged to eradicate the very kind of religious intolerance we see in Plaintiff**."  *See* Memorandum Opinion, April 18, 2014, at 3.  By Bailey's own impassioned sworn statements, Bailey seeks to

6

wage his own holy war against bigotry, defined as a point of view other than his own. Bailey explicitly vows to silence opinions with whom Bailey disagrees. Mem.Op. at 3.

By his own admission, Bailey is now seeking to transform the Anti-SLAPP Act from a defense and mechanism for quick resolution into an abusive weapon. Bailey states, under oath, that he is embarked on a determined project to attack what he perceives as bigotry. Bailey now seeks to silence public discussion of an actual "issue of public interest" concerning terrorism against the United States of America and its impact on those affected by seeking to impose excessive attorneys' fees to punish, intimidate, and chill public discussion of terrorism.

Therefore, Bailey is asking for an order for Vincent Forras to pay excessive attorney fees as a weapon to silence, intimidate, and chill those with whom Bailey disagrees, in his self-described war against certain public opinions.

Thus, the Court should find it inappropriate to award attorney fees here. The motion for attorney fees now seeks to use the Anti-SLAPP Act as a weapon, including by greatly exaggerating the attorneys' fees applicable.

## V.  COURT SHOULD DECLINE TO ORDER ATTORNEY FEES FOR THE FURTHER REASONS SET FORTH IN MOTION FOR RECONSIDERATION

Plaintiffs separately file a companion Motion for Reconsideration asking the Court to reconsider and reverse its April 18, 2014, decision upholding the Special Motion to Dismiss filed by Defendants under D.C.'s Anti-SLAPP Act. Whether or not the Court grants the Defendants Motion to Reconsider and reverses the decision, the Court should decline in the Court's discretion to order attorney fees, for the additional reasons presented in the Motion for Reconsideration. Plaintiffs incorporate those arguments here as if fully set forth herein.

## VI. MOTION FOR ATTORNEY FEES IS NOT REASONABLE – AMOUNT EXCEEDS REASONABLE ATTORNEYS' FEES

Defendant Bailey's request for $73,374.35 of attorneys' fees and costs is excessive.  A review of the billing records submitted reveals that at least $31,865.50 are obviously objectionable for the reasons explained in detail below.  Plaintiffs request limited discovery and oral argument to further examine the rest of the billable hours submitted in the motion for attorney fees.

D.C. Code § 16-5504  "Fees and costs" provides:

> (a) The court may award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502 or § 16-5503 the costs of litigation, including reasonable attorney fees.

\* \* \*

The statute allows "**the costs of litigation**" which is connected to "**including reasonable attorney fees**."  As a result, the statute allows an award of attorney fees only to the extent that the attorney fees are reasonable.  The statute quite clearly does not authorize all attorney fees actually incurred, if beyond what is reasonable.

D.C. Code § 16-5501, *et seq.* specifically provides a mechanism by which only the action a defendant needs to take is to file a Special Motion to Dismiss under D.C. Code § 16-5502.  Discovery is automatically stayed, unless specifically allowed by the Court for the purpose of considering the Special Motion to Dismiss.  All other proceedings are automatically stayed.

Thus the statute itself mandates – by implication but unmistakably by its structure and logic -- that the only "reasonable" attorney fees are those specifically for the purpose of pursuing the Anti-SLAPP Act remedies, *because the statute explicitly stays all other proceedings.*

As seen in the Declaration of Jonathan Moseley, Exhibit C, a competent non-party attorney could have done the same amount of work *for both motions to dismiss* – in both cases --

8

for an estimated $10,116.67, probably a lot less, even accepting the hourly fee rates claimed by the Defendant for District of Columbia attorneys.  *See* Declaration of Jonathan Moseley, Exhibit C, at pp. 8.  Defendants cannot in any way justify the amount of time and money spent in filing nearly the same motion in two courts.

It is clear that counsel for Defendants have put forth churned, padded calculations of fees in order to further cause financial harm on Plaintiffs.  The following is just an example of the churned calculations the Defendant Bailey has set forth. A copy of Defendant Bailey's billing statement, with questionable charges highlighted, is attached to this Opposition as Exhibit F.

Duplicative Charges For Re-Filing Motion to Dismiss in Federal Court

From May 7, 2013 to May 13, 2013 Defendant Bailey billed 27.1 hours and $14,227.50 for re-filing his motion to dismiss within the federal court.  The underlying facts and laws involved in this lawsuit were identical those in the District of Columbia Superior Court action.  There is no Federal version of the D.C. Anti-SLAPP Act and its Special Motion to Dismiss.  Therefore, all the Defendant needed to do is cut and paste the Special Motion to Dismiss from the D.C. Superior Court into a document template formatted for Federal Court.  This cut and paste and reformatting work should have been tasked to a paralegal at $75 per hour, with a quick review of Federal pleading requirements by an associate attorney at $250 per hour.

Yet Defendant Bailey's firm seeks to charge Plaintiffs with 27.1 billable hours, totaling $14,227.50, in order to modify a few lines in Defendant's motion to dismiss for the case pending in federal court.  This attempt is outrageous and nothing more than an attempt to churn the legal fees and increase the amount of attorneys' fees from Plaintiffs.

### The Motion for Attorney's Fees

Beginning on April 25, 2014, and extending to May 8, 2014, Defendant Bailey began to amass a large amount of attorney's fees simply in order to draft their motion for attorney's fees. *See* Exhibit 6 to Defendant's Supplemental Memorandum on Attorney's Fees at pp. 3. Specifically, $11,812 – or over 18% of the "reasonable" attorneys' fees which Mr. Bailey asks the Court to order to Bailey's law firm were simply for a memorandum in support of the notion that they should get attorney's fees. Given that the Court had already suggested that it may award attorney's fees, Defendant Bailey and other attorneys within his firm presumably sought to "pad the bill" in order to increase the amount of their award.

If the Court allows any attorney fees for preparing a motion to receive attorney fees, 18% of the total requested is clearly excessive for that purpose.

### Charges Unrelated to this Lawsuit

On February 24, 2012 Defendant Bailey's firm charges $1,020 for a telephone conference with attorney Laura Handman regarding the filing of an unrelated lawsuit involving Rachel Maddow. *See* Exhibit 6 to Defendant's Supplemental Memorandum on Attorney's Fees at pp. 1. Further, Defendant Bailey's firm once again spoke with Ms. Handman on March 5, 2012 and April 24, 2014, charging another $383.50 and $170.00, respectively. These charges, totaling $1573.50, are not related to this instant lawsuit and should not be included in the attorney's fees sought by Defendant.

Even more outrageous, on March 21, 202, Defendant Bailey's firm charged $157.50 on "Research on Klayman's recent activities; Forward to team." *See* Exhibit 6 to Defendant's Supplemental Memorandum on Attorney's Fees at pp. 1. Nowhere does Defendant Bailey state what these "recent activities" have anything to do with this lawsuit. Plaintiffs should not be

forced to pay for Defendant's curiosity to Plaintiff Klayman and their desire to research his "recent activities." Further, on February 22, 2012, Defendant Bailey charges $210 in order to "review email from Judicial Watch, attached indictment of Klayman for non-support." *Id.* Once again, Defendant has sought attorneys' fees for matters unrelated to this lawsuit. Emails from Plaintiff Klayman's previous employer, Judicial Watch, about his personal life, are in no way related to this lawsuit. That Defendant Bailey's firm decided to seek attorney's fees for delving into Plaintiff's personal life is unacceptable.

<u>Unreasonable Amounts of Time Charged For Tasks Alleged</u>

There are many instances in which Defendant Bailey's firm charges unreasonable amounts of money for relatively simple tasks. For example, on February 22, 2012, Defendant Bailey's firm billed 4.6 hours or $1995.00 in order to *review* a single page Notice of Dismissal that was filed in the District of Columbia Superior Court and to conduct "research" regarding the notice. On June 4, 2013 Defendant Bailey's firm billed 3.6 hours, or $1890.00 to review Plaintiff's Opposition to Defendant's motion to dismiss. Plaintiff's Opposition to Defendant's Motion to Dismiss was nearly identical to the Opposition filed the District of Columbia Superior Court, a pleading that Defendant Bailey had already reviewed and replied to. These are just two instances in which excessive amounts of time and money have been spent in order to do relatively simple tasks and this Court respectfully must not condone the churned and padded attorneys' fees that have been sought by Defendant Bailey.

As seen from just a sample of the alleged attorneys' fees sought by Defendant Bailey, there is clear evidence of churning and padding of the legal fees. If awarded, which they respectfully should not, reasonable attorneys' fees for filing the motion to dismiss would amount to no more than $10,116.67. *See Declaration of Jonathan Moseley* at pp. 8. Nevertheless

Defendant Bailey sought over $60,000 in attorneys' fees for doing the same amount of work, and this does not even include the amount sought to cover the expenses of attorney Christopher Hoge.  Indeed, Defendant Bailey seeks nearly five times the amount that a reasonable attorney would charge for filing the motion to dismiss in both the D.C. Superior Court and the federal court.  That Defendant Bailey seeks this amount of attorneys' fees is absurd.

For these reasons, Plaintiffs respectfully request that if this Court decides to award attorneys' fees, which it respectfully should not, then this Court should award an amount representing a reasonable amount of time that it took to file the motion to dismiss in both courts.

Furthermore, Defendant's claim that the Complaint is without merit also contradicts the reasonableness of attorney fees outside of the Special Motion to Dismiss alone.  While Plaintiffs obviously disagree as to the merits, Defendant Bailey is estopped and cannot rise above his own pleadings.  *Worsham v. Accounts Receivable Mgmt., Inc.* (4th Cir., 2012) (unpublished, but citing to *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc*., 976 F.2d 58, 61 (1st Cir. 1992) (observing that a "plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment"); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523*, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.")).

Allowing a Defendant to run up a large bill, unnecessarily, is directly in opposition to and violation of the purpose of the Anti-SLAPP Acts, which is to lower costs and obtain a quick and cost-effective result, where applicable.  It is not the purpose of the statute for a Defendant to run up an excessive bill, and <u>then</u> use the Anti-SLAPP Act as a club.

As this Court explained in its Memorandum Opinion, April 18, 2014 at 8, "'The Anti-SLAPP Act seeks to address these concerns "by incorporating substantive rights that allow a

defendant to more expeditiously, and more equitably, dispense of a SLAPP.' Comm. Report at 1."

Here, Bailey himself seeks to opportunistically transform the defense of an Anti-SLAPP statute into an abuse of the system and an attack upon those who seek the protection of the courts for their legal rights. The Court should deny Bailey's request for legal fees and/or the amount claimed, as being inherently unreasonable.

### VII. TWO IDENTICAL LAWSUITS REFILED, PROPER UNDER DIVERSITY JURISDICTION

It is contended that the same case was filed twice. Yet it is undisputed among the parties and the Court that the second lawsuit was identical to the first. Therefore, reasonable attorneys' fees cannot be significantly increased by simply moving the identical lawsuit from one forum to another. A change of venue or removal of a State lawsuit to Federal court, for example, would not justify doubling a lawsuit's costs.

Defendant Bailey seeks to portray the refilling of the lawsuit as vexatious. This thought must be rejected, and in fact it "must" be rejected, because removal of State law claims to the Federal courts is a fundamental part of the Federal court system. Routinely transferring State lawsuits to Federal Court is a major component of the activities of the Federal courts. Diversity jurisdiction of the Federal courts is established in the *U.S. Constitution, Art. III, § 2; see also, Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

When State lawsuits are removed to Federal court, the identical lawsuit that was in State court then proceeds in Federal court. The existence of two identical lawsuits, the one moved to the Federal court system, is routine and does not justify in and of itself increased attorney fees.

## VIII.   FEES FROM OUT OF STATE ATTORNEYS

The Court raised for further briefing the question of whether this Court can include in an award of attorney fees under the D.C. Anti-SLAPP Act the fees of attorneys who are not admitted in the District of Columbia.

Plaintiffs did not find authority defining this categorically.  However, Federal Courts will consider the nature of the out-of-state attorney's involvement.  For example, in *Bilazzo v. Portfolio Recovery Assocs., LLC*, Civil Case No. 11-4517 (D.N.J., June 25, 2012), attached as Exhibit D, analyzed at great length whether an out-of-state attorney acted improperly as lead attorney or merely in support of admitted counsel.  Where fees of out-of-state attorneys are accepted as part of an attorney fee award, it is on the basis that admitted attorneys may hire professionals to support them in their work.  *Moore v. Midland Credit Mgmt., Inc.*, Civil Case No. 3:12-cv-166, 16-17 (N.D. Ind., December 11, 2012), attached as Exhibit E.  The basis for including out-of-state attorneys is what is reasonable from the professional perspective of the admitted attorney.

Moreover, the statute D.C. Code § 16–5501, *et. seq.* imposes the standard of reasonableness.  Thus, attorney fees for out-of-state or non-admitted attorneys or other professionals are subject to a test of reasonableness, from the standpoint of an attorney admitted in the District of Columbia making that decision to hire non-admitted professionals.

Initially, the out-of-state law firm in question is Defendant Bailey's law firm of Adam Leitman Bailey, P.C. in New York, abbreviated (ALBPC).  Therefore, Bailey is asking the Court to pay "his" attorney fees, by billing attorney fees from his own law firm.  The Court should not allow Bailey to include his own law firm's work in ordering reimbursement of "his" law attorney fees from the lawsuit.

But furthermore, here, it is not reasonable for the admitted lawyers of Crowley, Hoge & Fein, P.C., charging the hourly fee rate of $350 per hour for attorneys Daniel H. Crowley, Christopher G. Hoge and Leslie G. Fein *see* Engagement Agreement, ECF Document # 15-4, to engage a New York law firm charging $525 per hour for attorneys Colin E. Kaufman, Dov Treiman, $425 per hour and later $525 per hour for William J. Gellar. *See* Declaration of Colin E. Kaufman, ECF Document # 15-2.

On the one hand, the New York law firm of Adam Leitman Bailey, P.C. could offer little or no expertise in D.C.'s Anti-SLAPP Act, District of Columbia practice, or the substance of the merits of the lawsuit in the District of Columbia lawsuit pursuant to D.C. law.

On the other hand, if admitted attorneys found it expedient to hire non-admitted attorneys to do some of their work, it would be objectively unreasonable for an attorney actually licensed in the District of Columbia to hire *more* expensive attorneys *not* licensed in the forum jurisdiction, absent some special expertise.  It is not reasonable to pay non-admitted attorneys between $425 and $525 per hour for senior out-of-state attorneys to do work in place of admitted District of Columbia senior attorneys at Crowley, Hoge & Fein, P.C. charging $350 per hour.  It is similarly unreasonable to hire a non-admitted junior attorney out-of-state at $295 per hour in place of the admitted junior attorney at Crowley, Hoge & Fein, P.C. at $250 per hour.  For it to be reasonable for the admitted lawyers to hire non-admitted lawyers and paralegals to support them, rather than attorneys licensed in the District of Columbia to do the work, the non-admitted attorneys doing supporting work would be cheaper, not more expensive.

Moreover, the legal substance under D.C. Code § 16–5501, *et. seq.* is (a) whether there is a prima facie case that the Anti-SLAPP Act applies, (b) whether the plaintiff can show a likelihood of success on the merits.  But the merits are under D.C. law, not New York law.

While it is true that Adam Leitman Bailey's law firm in New York would enjoy awareness of the history of the original case, the legal theories and legal substance of the New York lawsuit are not the same as the legal theories and substance of this case in the District of Columbia. Thus, the New York lawyers could not contribute more than a bare minimum of background knowledge or perhaps manpower cheaper than the admitted lawyers.

### IX.     ATTORNEY FEES FROM PRIOR LITIGATION IN THE DISTRICT OF COLUMBIA SUPERIOR COURT

The Court asked for briefing concerning whether the Court could award attorney fees from prior litigation. Defendant argues that FRCP 41(d) acts in the nature of an extender to authorize costs and fees from prior, substantially similar litigation.

Defendant does not claim that FRCP 41(d) authorizes any award of attorney fees, but only that FRCP 41(d) provides that if State law or other independent law authorizes fee-shifting, that the otherwise authorized fee-shifting can be extended to include the prior history of the same case dismissed and refiled. FRCP 41(d) is not an independent authority for fee-shifting.

Beyond this, Plaintiffs find little precedent to serve as guidance, as explained in Section V, above. However, the governing standard from the statute is that the attorney fees must be "reasonable." Whether attorney fees from prior, related litigation can be included in an attorney fee award clearly turns on reasonableness, the only standard established, which is in the statute.

Here, all admit that the prior litigation is identical to the current litigation, merely moved to a different forum. It is objectively unreasonable *for a party's attorney to be paid twice for doing work only once*. Therefore, unless there is a compelling reason why additional work is required by transferring the original State case to Federal court, reasonable attorney fees must include doing the work that is necessary to be done only once, not twice.

X.     LACK OF INTERPRETATION BY DISTRICT OF COLUMBIA

The Court should further exercise restraint because the District of Columbia's Court have not construed or applied its own Anti-SLAPP Act. Both sides in these questions and the Court are left with little precedential guidance in application of D.C.'s Anti-SLAPP Act.

The Court noted in its Mem.Op. at 9, that the District of Columbia courts have not had the opportunity to interpret or apply D.C. Code § 16–5501, *et. seq.* "In construing the Anti–SLAPP Act, this Court unfortunately has no guidance from the D.C. Court of Appeals, which, to date, has not issued a published opinion interpreting the statute." Mem.Op. at 9. Therefore, caution and restraint is called for. The Court relied upon the proposition that "With this principle in mind, the Court deems it noteworthy that the Committee Report prepared in connection with the Anti–SLAPP Act emphasizes that the law was designed to "follow[ ] the model set forth in a number of other jurisdictions," Comm. Report at 1." Mem.Op. at 9. It does not provide any meaningful guidance to say that interpretation may follow that of "a number of other jurisdictions" – which D.C. has not specified. For a Federal court to find D.C.'s interpretation from "[any] number of other jurisdictions" is entirely arbitrary and is not a substitute for interpretation of the District of Columbia's laws by the District of Columbia. The Court further quoted: "Where appropriate, then, the Court will look to decisions from other jurisdictions (particularly those from California, which has a well-developed body of anti-SLAPP jurisprudence) for guidance in predicting how the D.C. Court of Appeals would interpret its own anti-SLAPP law." *Boley v. Atl. Monthly Grp.,* 950 F. Supp. 2d 249, 254-55 (D.D.C. 2013). But <u>which</u> "other" jurisdictions reflect the District of Columbia's interpretation? This cannot be an open-ended invitation to an *ala carte* selection of views from anywhere. So here it is not "appropriate" to look to decisions "from other jurisdictions" without any indication from the

17

District of Columbia as to which other jurisdictions D.C. Courts choose to follow here.

### XI.   CONCLUSION

Plaintiffs respectfully move the Court to deny the motion of the Defendants for attorney fees brought pursuant to D.C. Code § 16–5501, *et. seq.*, or in the alternative to award only such smaller sum of attorneys' fees as is appropriate, or in the alternative to stay consideration of attorney fees until after Plaintiff's appeal of the Special Motion to Dismiss.

June 27, 2014

>Respectfully Submitted,
>
> /s/ *Larry Klayman*
>Larry Klayman, Esq.
>D.C. Bar No. 334581
>Klayman Law Firm
>2020 Pennsylvania Ave. NW #345
>Washington, DC 20006
>Tel: (310) 595-0800
>Email: leklayman@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s):

Mr. Christopher G. Hoge, Esq. #203257
CROWLEY, HOGE & FEIN, P.C.
1730 Rhode Island Avenue, N.W.
Suite #1015
Washington, D.C. 20036
(202) 483-2900
(202) 483-1365 (FAX)
chfcgh@aol.com
*Attorneys for Defendant Bailey*

                                              Respectfully Submitted,

                                        /s/ *Larry Klayman*
                                        Larry Klayman, Esq.
                                        D.C. Bar No. 334581
                                        Klayman Law Firm
                                        2020 Pennsylvania Ave. NW #345
                                        Washington, DC 20006
                                        Tel: (310) 595-0800
                                        Email: leklayman@gmail.com